Sheila **WAHRER**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. A-5148.

Court of Appeals of Alaska.

Aug. 18, 1995.

---

Sharon Barr, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, for appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Sheila Wahrer appeals her conviction for fourth-degree misconduct involving a controlled substance, AS 11.71.040(a)(5). She contends that the trial judge misinstructed the jury concerning an element of this offense. We find that the challenged jury instruction was proper, and we therefore affirm Wahrer's conviction.

The statute Wahrer was convicted of violating, AS 11.71.040(a)(5), forbids a person to

knowingly keep[ ] or maintain[ ] any ... building, vehicle, boat, aircraft, or other structure or place which is used for keeping or distributing controlled substances in violation of a felony offense under [AS 11.71] or AS 17.30[.]

At Wahrer's trial, the State asserted that Wahrer had maintained an apartment in the Mountain View area of Anchorage that was being used as a "crack house"—a place where cocaine was prepared and sold.

Viewed in the light most favorable to the State, the evidence at trial showed that Wahrer, using a false name, rented the apartment and then allowed various individuals to use the premises as the site of a cocaine business.

Wahrer defended by contending that she rented the apartment so that a man named "Ray" could live there. Wahrer testified that she barely knew "Ray", but she was interested in getting to know him better. She asserted that she had rented the apartment for Ray out of friendship, and that she had no idea that the apartment was being used for drug sales. Wahrer explained that she, rather than Ray, had rented the apartment because she believed that a landlord would be more likely to rent to her (a white woman) than to Ray (a black man). She said that she had used false identification because she was nineteen years old and she believed that she could not legally rent an apartment unless she was twenty-one.

At the close of trial, when the court was formulating the jury instructions, both the parties and the court struggled over the definition of "keep or maintain" a building. Superior Court Judge Rene J. Gonzalez ultimately decided to give the following instruction (over Wahrer's objection):

A person keeps or maintains a building, dwelling, or other structure or place if that person [either] conducts business operations or knowingly allows others to conduct business operations in a building [or] place which that person controls or had the right to control either through ownership or lease. Said business may be either legal or illegal.

Wahrer objected that the court's definition of "maintaining" suggested that this element could be satisfied by proof of a defendant's passive and purely legal relationship to the premises—that Wahrer could be found guilty simply because she signed the lease for the apartment. Wahrer contended that the statute required that the defendant have a more active relationship to the premises—one involving the exercise of control, not mere legal title. Wahrer's attorney proposed the following instruction:

To keep or maintain a dwelling, building, or other structure ... means to take care of, support, conduct, or manage a structure or place for some particular purpose.

Judge Gonzalez rejected this instruction, but he informed Wahrer's attorney that the defense would be entitled to argue to the jury that, even though Wahrer signed the lease, Wahrer nevertheless had no right to control the activities taking place at the apartment.

On appeal, Wahrer renews her argument that the challenged jury instruction was improper. She argues that, under the court's instruction, the jury might have convicted Wahrer even if they believed that her only connection to the apartment was that she signed the lease and then relinquished control over the premises to Ray and his associates. The short answer to Wahrer's argument is that, once she secured the lease, even if she later chose to relinquish control of the apartment to Ray and the others, she still might properly be convicted.

In *Dawson v. State*, 894 P.2d 672 (Alaska App.1995), this court recently analyzed the meaning of the statute in question, AS 11.71.040(a)(5). We concluded that the statute requires proof that the defendant "knew" (as defined in AS 11.81.900(a)(2)) that the premises were being used for continuing illegal drug activity. *Dawson*, 894 P.2d at 677. We also concluded that the statutory phrase "keeps or maintains" refers to a defendant's possessing "control or hav[ing] authority to control the use or occupancy of the structure". *Id.* at 676.

With the hindsight of *Dawson*, it can be seen that Judge Gonzalez correctly rejected Wahrer's proposed instruction concerning "keep or maintain". Under Wahrer's proposed definition, the jury could not have convicted her unless they found (a) that she actively took care of or managed the apartment, and (b) that she did so with the intention that the apartment be used as a site for the sale of illegal drugs. (Wahrer's proposed instruction defined "keep or maintain" as "tak[ing] care of, support[ing], conduct[ing], or manag[ing] a structure or place for some particular purpose".)

As *Dawson* clarifies, AS 11.71.040(a)(5) does not require proof that the defendant actively controlled or participated in the illegal drug activity, nor does the statute even require proof that the defendant shared the purpose of advancing the illegal drug activity. Rather, the State must prove that the defendant knowingly permitted the illegal drug activity to take place on the premises. The defendant's act of permitting the illegal drug activity may be proved by evidence of the defendant's express authorization, but it may also be proved by evidence that the defendant allowed the illegal drug activity to proceed by "tacit consent or by not hindering [or by] taking no steps to prevent [it]". *Dawson*, 894 P.2d at 677 n. 5 (quoting *State v. Pyritz*, 90 Or.App. 601, 752 P.2d 1310, 1313 (1988).

In Wahrer's case, the State was obliged to prove that Wahrer had sufficient control over the apartment that she could have prevented its use as a site for cocaine sales had she wished. The State introduced evidence that Wahrer was the leaseholder of the apartment and that Ray and the other occupants of the apartment were, essentially, tenants at her sufferance. This evidence, if believed, was sufficient to prove that Wahrer "kept or maintained" the apartment within the meaning of AS 11.71.040(a)(5). The State was not required to prove that Wahrer managed or otherwise actively controlled the apartment—only that she had the authority to control the premises if she chose to exercise it.

Judge Gonzalez's instruction to the jury embodied this interpretation of the statute. The court's instruction told the jurors that the element of "keep or maintain" was satisfied if the State proved that Wahrer (a) "knowingly allowed" (that is, Wahrer was aware of and permitted) (b) other people to conduct "business operations" (in this case, continuing sales of cocaine) (c) in an apartment that she either "control[led] or had the right to control ... through ... lease". We find no error in this instruction.[1]

1. As we recognized in *Dawson,* and as the parties to the present appeal concede, most of the important terms in AS 11.71.040(a)(5) have no express statutory definition, and there is a paucity

The judgement of the superior court is AFFIRMED.

of legislative history to aid in analyzing the statutory language. It is one thing for an appellate court to construe this statute after weeks of deliberation, quite another when a trial judge is called upon to construe the statute in the press of an ongoing trial. We commend Judge Gonzalez for his careful analysis of the statute.