Sven ROFKAR, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10383.

Court of Appeals of Alaska.

July 5, 2013.

Dan S. Bair, Assistant Public Advocate, and Richard Allen, Alaska Public Advocate, Anchorage, for the Appellant.

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and COATS, Senior Judge.[*]

*OPINION*

Senior Judge COATS.

Sven Rofkar was found guilty of four counts of misconduct involving a controlled substance in the fourth degree.[1] Three of these counts charged that Rofkar possessed or manufactured marijuana.[2] The superior court merged these jury verdicts into a single conviction. But the court did not merge the fourth count, which charged Rofkar with maintaining a building for keeping or distributing controlled substances.[3] Rofkar argues that Alaska's Double Jeopardy Clause requires that his conviction for maintaining a building for keeping or distributing controlled substances must merge with his other conviction. As we explain in this decision, we now hold that Rofkar's conviction for maintaining a building for keeping or distributing controlled substances must merge with his conviction for possessing and manufacturing marijuana.

*Why we conclude that Rofkar's conviction for maintaining a building for keeping or distributing controlled substances should merge with his merged conviction for possessing or manufacturing marijuana*

Our discussion of this issue starts with the leading case of *Whitton v. State*, 479 P.2d 302 (Alaska 1970). In *Whitton*, the defendant was convicted of robbery and of the separate crime of using a firearm during the commis-

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

[1] AS 11.71.040.

[2] AS 11.71.040(a)(2); AS 11.71.040(a)(3)(F); and AS 11.71.040(a)(3)(G).

[3] AS 11.71.040(a)(5).

sion of a robbery (the same robbery).[4] The Alaska Supreme Court held that these convictions were for the "same offense", and that they should merge.[5]

The supreme court declared that this double jeopardy question should be resolved "by focusing upon the quality of the differences, if any exist, between the separate statutory offenses, as [these] differences relate to the basic interests sought to be vindicated or protected by the statutes."[6]

The [court] first [must] compare the different statutes in question, as they apply to the facts of the case, to determine whether [they] involved differences in intent or conduct. [The court must] then judge any such differences ... in light of the basic interests of society to be vindicated or protected, and decide whether those differences [are] substantial or significant enough to warrant multiple punishments. The social interests to be considered ... include the nature of personal, property or other rights sought to be protected, and the broad objectives of criminal law such as punishment of the criminal for his crime, rehabilitation of the criminal, and the prevention of future crimes.

If [these] differences in intent or conduct are significant or substantial in relation to the social interests involved, multiple sentences may be imposed, and the constitutional prohibition against double jeopardy will not be violated. But if there are no such differences, or if they are insignificant or insubstantial, then only one sentence may be imposed under [the] double jeopardy [clause]. Ordinarily the one sentence to be imposed will be based upon or geared to the most grave of the offenses involved, with degrees of gravity being in-

dicated by the different punishments prescribed by the legislature.[7]

In order to carry out the dictates of *Whitton*, we turn to the legislative history behind the statute that prohibits maintaining a building for keeping or distributing controlled substances.

The statute in question was enacted in 1982, when the Alaska Legislature revised the drug laws and added chapter 71 to Title 11 of the Alaska Statutes.[8] The legislature's stated purposes were to follow the federal and uniform controlled substances acts, provide uniform sentencing, and combat illicit trafficking in drugs.[9] The statute that prohibits maintaining a building for keeping or distributing controlled substances, AS 11.71.040(a)(5), has not changed since its 1982 enactment, except for a small grammatical change.[10]

Only one paragraph of the legislative commentary addresses the offense of maintaining a building for keeping or distributing controlled substances, AS 11.71.040(a)(5). And the only example set out in the commentary describes a landlord who knowingly rents premises to a person who uses the building for manufacturing or distributing controlled substances illegally:

Paragraph (a)(5) prohibits keeping or maintaining a building, vehicle or other place which is used for keeping or distributing a controlled substance in violation of a felony offense under AS 11.71 or AS 17.30. *This provision, for example, would include the landlord of a warehouse who knowingly rents to a person who uses the structure for manufacturing or distributing controlled substances illegally.*[11]

Although the legislature amended the controlled substances laws in 2006, it has not

4. *Whitton*, 479 P.2d at 303–04.

5. *Id.* at 314.

6. *Id.* at 312.

7. *Ibid.*

8. SLA 1982, ch. 45.

9. Commentary and Sectional Analysis for the 1982 Revision of Alaska's Controlled Substances

Laws, Conference Committee Substitute for Senate Bill No. 190, at 1.

10. The 1982 version read "... which is used for keeping or distributing" and the current version reads "... that is used for keeping or distributing."

11. Commentary and Sectional Analysis for the 1982 Revision of Alaska's Controlled Substances Laws, Conference Committee Substitute for Senate Bill No. 190, at 21 (emphasis added).

amended the statute that proscribes maintaining a building for keeping or distributing controlled substances.

In 1988, in *Davis v. State*, 766 P.2d 41 (Alaska App.1988), this Court held that a defendant could be convicted of a drug offense and separately convicted for keeping or maintaining the building used to commit that same drug offense. In *Davis*, the defendant was convicted of possessing cocaine with intent to deliver, and separately convicted of maintaining the building—his own house— where he distributed the cocaine.[12] The defendant argued that his convictions should merge, but this Court affirmed the separate convictions.

This Court's treatment of Davis's double jeopardy argument consisted of one conclusory paragraph:

Davis next contends that the double jeopardy clause of the Alaska Constitution prohibits separate convictions and sentences for possession of cocaine with intent to deliver, AS 11.71.030(a)(1), and knowingly maintaining a dwelling used for keeping or distributing cocaine, AS 11.71.040(a)(5). We find no merit to this claim. While Davis' violation of both statutes resulted from a single course of action, the offenses differ markedly in the conduct that they prohibit and in the specific social interests that they seek to preserve. Davis' double jeopardy rights were not infringed by the entry of separate convictions and sentences on these charges.[13]

Thirteen years after *Davis*, this Court decided *Tunnell v. State*.[14] The defendant in *Tunnell* was convicted of multiple counts based on a marijuana growing operation in his home.[15] This Court struggled with whether a defendant who was convicted for a marijuana growing operation in his home could be separately convicted for maintaining

a building for keeping or distributing controlled substances.[16] We ultimately concluded that it was impossible to tell from the record whether the conviction for maintaining a building for keeping or distributing a controlled substance should merge with the other convictions. We therefore remanded this issue to the trial court.

In a concurring opinion which foreshadowed the conclusion that we reach today, Judge Mannheimer questioned whether the defendant in *Davis*, who was convicted of possessing cocaine for the purpose of sale in his own house, could also properly be convicted of maintaining a building for keeping or distributing that controlled substance.[17]

We now conclude, based on the legislative commentary, that the offense of maintaining a building for keeping or distributing controlled substances is aimed primarily at persons who facilitate someone else's drug offenses—to quote the commentary, people such as "the landlord of a warehouse who knowingly rents to a person who uses the structure for manufacturing or distributing controlled substances illegally." [18]

It appears that the legislature enacted AS 11.71.040(a)(5) to reach people who facilitate the commission of drug felonies by providing a building or other structure for keeping or distributing the controlled substance, but who would not necessarily be prosecutable as accomplices to the underlying drug offense.

To be convicted of violating AS 11.71.040(a)(5), a defendant must have the authority to control the structure, and the defendant must be aware that the property is being used for illegal purposes.[19] However, such a defendant would not necessarily be an accomplice to the underlying drug offense— because mere awareness that a crime is be-

---

**12.** *Davis*, 766 P.2d at 42.

**13.** *Id.* at 46.

**14.** Alaska App. Memorandum Opinion No. 4465, 2001 WL 1173976 (October 3, 2001).

**15.** *Tunnell*, 2001 WL 1173976, at *4.

**16.** *Ibid.*

**17.** *Id.* at *11–12 (Judge Mannheimer, concurring).

**18.** Commentary and Sectional Analysis for the 1982 Revision of Alaska's Controlled Substances Laws, Conference Committee Substitute for Senate Bill No. 190, at 21.

**19.** *Dawson v. State*, 894 P.2d 672, 677–79 (Alaska App.1995).

ing committed is normally not sufficient to establish complicity under AS 11.16.110(2).[20]

Thus, as this Court recognized in *Wahrer v. State*, 901 P.2d 442, 444 (Alaska App.1995), a defendant can be successfully prosecuted under AS 11.71.040(a)(5) even though the State is unable to prove that the defendant bears accomplice liability for the underlying illegal drug activities that take place in the building or structure—*i.e.*, even though the State is unable to prove that the defendant aided or abetted those illegal drug activities with the specific intent to promote or facilitate the commission of the underlying offenses. *See* AS 11.16.110(2).

We now turn to an analysis of Rofkar's convictions. Under the trial judge's instructions, the jury could find Rofkar guilty of maintaining a building for keeping or distributing controlled substances if the jury found that Rofkar had control over the building and knew about the marijuana growing operation. To convict Rofkar of this charge, the jury did not have to find that Rofkar actively controlled or participated in the marijuana growing operation, or that he acted with the purpose of promoting or facilitating this illegal drug activity. The State only had to prove that Rofkar "knowingly permitted the illegal drug activity to take place on the premises."[21]

But if the jury was convinced of this, the jury could also convict Rofkar of the other three charges (the allegations of marijuana possession and manufacturing) under a complicity theory, if the jury additionally found that Rofkar acted with the intent of promoting or facilitating the marijuana growing operation. In other words, the proof of this additional culpable mental state (intent to promote or facilitate), coupled with Rofkar's act of providing a building to house the marijuana grow, rendered him guilty of the other marijuana charges. *See* AS 11.16.110(2).

Under this complicity theory, Rofkar's composite conviction on the three counts of possessing or manufacturing marijuana essentially encompassed his conduct of maintaining a building. Rofkar's act of providing

the building for the marijuana grow did not differ substantially from the conduct that underlies his convictions on the other three marijuana counts. We therefore conclude that, under *Whitton*, Rofkar's conviction for maintaining a building for keeping or distributing controlled substances must merge with his composite conviction for the other three marijuana offenses. To the extent that *Davis v. State*, 766 P.2d 41 (Alaska App. 1988), is inconsistent with this decision, that case is overruled.

*Conclusion*

The superior court is directed to vacate Rofkar's separate conviction for maintaining a building for illegally keeping or distributing controlled substances, and to merge this conviction with Rofkar's conviction on the other charges. The superior court is further directed to resentence Rofkar.

We do not retain jurisdiction of this case.

---

**20.** See the discussion of this point in *Riley v. State*, 60 P.3d 204, 210 (Alaska App.2002).

